DUNN et al. v. HOWE.

(Circuit Court, D. Massachusetts. June 30, 1899.)

No. 766.

1. CORPORATIONS—STOCKHOLDERS—ACTION BY ASSIGNEE IN INSOLVENCY TO RECOVER UNPAID SUBSCRIPTIONS.

No assessment by a court is necessary, under the Maine statutes, to authorize the assignee of an insolvent corporation to maintain an action against stockholders to recover for stock not paid for.

2. PARTIES—STATUTORY OFFICERS—RIGHT TO SUE IN OTHER JURISDICTIONS.

An assignee in insolvency of a Maine corporation, who is given by the statutes of that state a right of action against its stockholders to recover for stock issued without bona fide payment of full value therefor, which right of action did not exist in the corporation, may maintain such an action in a federal court of another jurisdiction.

3. CORPORATIONS — LIABILITY OF STOCKHOLDERS ON SUBSCRIPTIONS — MAINE STATUTE.

The statute of Maine gives a right of action to any trustee, receiver, or other person appointed to close up the affairs of any insolvent corporation against "any person or persons who have subscribed for or agreed to take the stock in the corporation, and have not paid for the same," to recover the par value of the stock for the benefit of the creditors of the corporation. The supreme judicial court of the state has construed such statute as imposing liability only on persons who had dealings in relation to the purchase of stock directly with the corporation, and not on transferees, though the stock had not been paid for by the original subscriber. *Held,* that where stock was voted to be issued to a certain person on a contract between him and the corporation, and certificates were by his direction issued in the name of a third person, but were delivered to and receipted for by himself, he was the person liable under the statute in case the stock was not paid for, and a recovery could not be had thereunder against a subsequent holder, though new certificates had been issued to him, and the old ones canceled; it not appearing that the stock had ever been surrendered to or owned by the corporation after it was originally issued.

This was an action by the assignees in insolvency of a corporation against a stockholder, under the statute of Maine, to recover the subscription price of the stock.

Wm. P. Foster, P. H. Gillin, E. C. Ryder, and C. J. Dunn, for plaintiffs.

Southard & Parker, for defendant.

PUTNAM, Circuit Judge. This action was brought by an assignee of the Bangor Pulp & Paper Company, an insolvent Maine corporation, appointed by a Maine court of insolvency, and is based on a statute of that state which provides that the capital stock subscribed for any corporation shall be declared to be and stand for the security for all creditors thereof, and that no payment upon any subscription to, or agreement for, the capital stock of any corporation shall be deemed a payment within the purview of the statute unless bona fide made in cash, or in some other matter or thing at a bona fide and fair valuation thereof. It also enacts that no stockholder shall be liable for the debts of the corporation beyond any amounts not so paid. · It also provides that "any person having a judgment against the corporation, or any trustee, receiver or other person appointed tc close up the affairs of any corporation which is or may be insolvent, may, within two years," etc., "commence an action, without demand or without previous formalities, against any person or persons who have subscribed for, or agreed to take, the stock in the corporation, and have not paid for the same." Rev. St. Me. c. 46, § 47. The purpose of the statute was threefold: First, to declare the rule of the common law, which requires that a fund shall be gathered to meet the liabilities of a corporation equal to the amount of the capital stock issued to stockholders; second, to wipe out all liability on the part of any stockholder who had fairly paid for his stock, or, so far as he had paid, to relieve him to that extent; third, to obviate the difficulties with which the courts have surrounded this topic, by insisting on the rule that there must be equality among all creditors and among all stockholders, and also the rule in equity that there can be no proceeding unless in a jurisdiction where the corporation can be made a party. Therefore this statute provided that any stockholder might be sued for the amount not paid in by him on his stock, without reference to any other stockholder; and that a suit might be brought by any creditor, or by any other person interested in the manner stated by it.

The first question we have to meet is whether, under this statute, an assessment is required by the order of any court. Under some circumstances the courts may order an assessment, but Potts v. Wallace, 146 U. S. 689, 13 Sup. Ct. 196, which is a case wonderfully like this, holds that, where the deficiency is equal to the amount of the unpaid stock, no assessment is necessary; and such is the unqualified provision of the statute in issue here.

The next question that arises is whether the plaintiff has a standing in a federal court in a district other than that where the corporation has its domicile. There can be no doubt that a statutory assignee of an insolvent corporation comes within the terms of the statute. He is one of the "other" persons named in it, and beyond dispute he is qualified to maintain a suit of this character within the district of Maine. The ordinary rule is that a statutory officer cannot sue outside the jurisdiction in which he is appointed, but that rule does not apply where the right of action first vests in him. The assignee is given by the statute a right of action which, in this case, did not otherwise exist. It is like the ordinary case of a statute

giving damages in a civil suit for a death where there is no survival of any right of action, in which case the administrator may sue anywhere, because the right first vested in him.    Therefore we hold that the plaintiff has a standing in this court to maintain this suit.    This statute is a wholesome law, and has been administered by the supreme judicial court of Maine in a wholesome spirit.    Although it applies only to persons who "subscribe for or agree to take" stock, yet, in accordance with sound rules, the supreme judicial court of Maine has held that a man who has taken stock from a corporation must, in the eyes of the law, be said to have "agreed to take" it.    The mere fact that a contract is executed does not relieve it from its character as such.    In order that a person taking stock shall be liable, the stock must be taken by him, and the dealings had between him and the corporation.    The supreme judicial court of Maine, in dealing with this statute, has gone to the very substance of the transaction and the root of the thing, and it has not looked at all at the mere form.    So that court has held that, if A. B. takes out shares of stock in the name of C. D., especially when not authorized by C. D., A. B. is liable, and C. D. is not.    What, then, was the substance of the transaction at bar?    The first thing we have is a contract between the Orono Pulp & Paper Company and Mr. H. S. Rice and others. Mr. Rice is the only person named in the contract.    Who the others were we do not know, except that the case shows beyond doubt that Mr. Horsford was one of them.    The contract provided that the Orono Pulp & Paper Company should execute a lease of certain property to Mr. Rice and his associates, or to a corporation to be formed by them. within a few days over a month from the execution of the contract, the corporation whose stockholder is sued here was organized, under the laws of Maine by Mr. Rice, Mr. Horsford, and Mr. Whitman, those three persons being all who were named in the certificate of organization.    There can be no question that we would be required to find, in view of the expression in this contract with reference to a corporation thereafter to be formed, that this was a continuous transaction, and, whether it was or not, the various steps come so close together that Mr. Rice and Mr. Horsford must be held in law trustees for the new corporation; and any stock issued to them in exchange for the contract would be without consideration.    Next we find this proceeding on the records of the new corporation:    "August 1, 1892. Voted, that the assignment of contract of H. S. Rice and others with Orono Pulp and Paper Company be accepted, and the clerk be directed to notify the Orono Pulp and Paper Company of said assignment."    The assignment is not produced; but, inasmuch as a short time afterwards —on the 1st day of October, 1892—a lease was executed from the Orono Pulp & Paper Company to the Bangor Pulp & Paper Company in pursuance of that contract, there can be no question that an assignment was either executed or waived.    Messrs. Rice and Horsford were present at the meeting in August, 1892, and the recital in the vote of an assignment in the presence of these gentlemen was sufficient to constitute an accomplished transaction.    What is the next thing we find?    Certificates of stock were at the same meeting directed to be issued as follows: a certain number to Rice, and 550 shares

to Horsford, "or order." Mr. Sawyer, the treasurer of the new corporation, testifies that he had an order from Mr. Horsford to issue a large portion of the stock—if not the whole of it—to a Mr. Powers; and certificates numbered 6, 7, and 8, covering the 105 shares now in the name of the defendant, were accordingly made out in the name of Mr. Powers. Those certificates were delivered into the hands of Mr. Horsford, and he gave his receipt for them. There is nothing to show that Mr. Powers had any interest in the matter. In our judgment, the transaction was complete under the statute when the votes cited were passed, but, if anything more was needed, the issue of the stock certificates to Mr. Powers, accepted by Mr. Horsford, fixed on the latter a liability under the statute for the par of the stock so issued; and, as two persons cannot be liable under the statute for the same stock, unless they jointly take it, and as Mr. Horsford thus became liable, it is not possible that any other person can be. Of course, there might have been subsequent transactions which might have entirely changed the conditions, and thus made an exceptional case; and we will look to see whether there were any of that nature. Stock may be issued, and afterwards surrendered to the corporation, and become what is known as "treasury stock,"— that is, no longer outstanding stock; and, if meanwhile no debts have accrued, the original transaction may thus be annulled, and the original stockholder disappear entirely from the matter, and the stock become as though it had never been issued. Thus there may come in a new person, who takes that stock from the corporation. He deals directly with the corporation, and the statute applies. So, also, it is possible that stock, on its face, may be assessable. If such stock is transferred on the books of the corporation to a purchaser, and a like new certificate is issued, and the corporation has meanwhile incurred no debts, the holder of the new certificate may become liable to subsequent creditors, because all the parties have agreed to put him in the place of the original subscriber. The latter condition cannot exist in this case, because the stock here contains no reservation of any right to make any further assessment, and by the very terms of the vote of 1892 it was put out as fully paid. Is there anything here to show that the circumstances covered by our first hypothesis exist; that is to say, that this stock was surrendered to the corporation by Mr. Horsford, so that the corporation had a right to issue it as it would any other stock which had never been issued? It is to be borne in mind that the supreme judicial court of Maine has properly held that a transferee is not liable although the original holder of the stock had not paid for it. The statute deals only with the parties who have dealt with the corporation, and no mere transferee of stock can be liable, even though he may know that the stock was issued without payment as the statute requires. Is there any evidence that this stock was surrendered to the corporation, and was issued anew by it to this defendant? Not a particle that we can see. In form, that did occur; and the forms would be exactly the same in case of the sale of stock from one person to another as in the case of a surrender of stock to the corporation, and its issue by the corporation to a new shareholder on a contract between the cor-

poration and the new shareholder, because, under the rules of corporations, no certificate can be issued to a transferee until the old certificate is surrendered. But all the transactions in this case were simultaneous, and they were the ordinary transactions where stock is transferred, and a new certificate issued therefor. There is not a particle of evidence which would justify the court in holding that the situation was of any other character than that which ordinarily exists when stock is transferred, or in holding that the defendant ever dealt with this corporation as to this stock. Whether the stock was put in his name without his knowledge, or whether by an arrangement between him and Mr. Horsford, is not of importance, because the defendant is not shown to have had any dealings with the corporation beyond the formal acceptance of the certificate of stock. There has been some discussion whether the defendant is estopped from denying that he is a stockholder, but that is not the question. It is whether he got his stock by dealing with the corporation. A man may be a stockholder without having dealings with the corporation for the acquisition of the stock, as he may not be a stockholder of record and yet have had dealings with the corporation which render him liable under the statute. It is plain the plaintiff cannot recover.