IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## WESTERN DIVISION.

## JACKSON, APRIL TERM, 1915.

---

J. H. SULLIVAN, RECEIVER, *v.* C. F. FARNSWORTH.

### (*Jackson.* April Term, 1915.)

1. **CORPORATIONS. Stockholders. Liability. Subscription.**
   Where defendant did not formally subscribe for stock in a corporation, but merely receipted for, accepted, and held the certificates, he was nevertheless liable for the unpaid balance of the stock. (*Post, pp.* 696-698.)

   Cases cited and approved: Upton v. Tribilcock, 95 U. S., 45; Chubb v. Upton, 95 U. S., 665; Sanger v. Upton, 91 U. S., 56; Jackson v. Traer, 64 Iowa, 469; Calumet Paper Co. v. Stotts, 96 Iowa, 147; Clevenger v. Moore, 71 N. J. Law, 148; Dunn v. Howe (C. C.), 96 Fed., 160; Barron v. Burrill, 86 Me., 66; Id., 86 Me., 72; Shickle v. Watts, 94 Mo., 410.

2. **PLEADING. Objections. Cure. Pleading of adverse party. Statutes of other states.**
   Although it is necessary to plead and prove the statutes of a foreign State in order to recover under them, plaintiff is relieved from doing so, if defendant pleads them and agrees that

132 Tenn.]                    (691)

they control, since the defendant is thereby estopped from controverting them.  (*Post, pp.* 699, 700.)

Cases cited and approved:  N. & C. R. Co. v. Sprayberry, 56 Tenn., 852; Railroad v. Foster, 78 Tenn., 351; Railway Co. v. Lewis, 89 Tenn., 235; Kelley Bros. v. Fletcher, 94 Tenn., 1; Harris v. Water & Lt. Co., 114 Tenn., 328; Mandel v. Swan, etc., Co., 154 Ill., 177; Ball v. Anderson, 196 Pa., 86; Rice v. Merrimack Hosiery Co., 56 N. H., 114; Salt Lake, etc., Bank v. Hendrickson, 40 N. J. Law, 52; Nashua, etc., Bank v. Anglo-Amer., etc., Co., 189 U. S., 221.

3. **CORPORATIONS.**  Stockholders.  Holding without subscription.

Where statutes provide for recovery of the unpaid balance on stock only in case of "subscription to or agreement for" the stock, the actual taking of the shares will support the action; on express agreement being necessary.  (*Post, pp.* 700, 701.)

Case cited and distinguished:  Barron v. Burrill, 86 Me., 72.

4. **PLEADING.**  Requisites.  Formal words.  Fraud.

Rev. St. Me. 1903, ch. 47, sec. 50, provides that stock may be issued in payment for services, and, in the absence of fraud, the judgment of the directors shall be conclusive as to the value of such services.  *Held*, that a bill charging the issuance of stock to defendant to be without consideration sufficiently impeaches the consideration as fraudulent, although the word "fraud" is not used.  (*Post, pp.* 701, 702.)

5. **CORPORATIONS.**  Liability of stockholders.  Jurisdiction. Laws of other states.  Comity.

Although, under the general rule that stockholders may be compelled to pay up their stock in full for the benefit of creditors, in Tennessee it must appear that other assets, when collected, are insufficient, and all holders of stock not fully paid up must be made parties, so as to apportion the loss equitably among them, nevertheless, where the stock is that of a foreign corporation, the relation of the holder being contractual and entered into in contemplation of the laws of the State of incorporation, those laws govern, and the courts of Tennessee will

Sullivan v. Farnsworth.

enforce the remedy they provide against a single stockholder, in so far as that remedy is not penal. (*Post, pp.* 703-707.)

Cases cited and approved: Sweeney v. Railroad, 118 Tenn., 297; Jones v. Whitworth, 94 Tenn., 602; Shields v. Clifton Land Co., 94 Tenn., 123; Cartwright v. Dickinson, 88 Tenn., 476; Railroad v. Parks, 86 Tenn., 560; Morrow v. Iron & Steel Co., 87 Tenn., 265; Chase v. Railroad Co., 5 Lea, 415; Kelley v. Fletcher, 94 Tenn., 1; Upton v. Tribilcock, 91 U. S., 47; Washburn v. Green, 123 U. S., 30; Appleton v. Turnbull, 84 Me., 72; Trust Co. v. Loan Co., 92 Me., 448; Simmons v. Taylor, 106 Tenn., 740; Adler v. Mil. Pat. Brick Mfg. Co., 13 Wis., 57; Patterson v. Lynde, 112 Ill., 196; Vick v. Lane, 56 Miss., 681; Pierce v. Construction Co., 38 Wis., 258; Hadley v. Russell, 40 N. H., 109; Erickson v. Nesmith, 46 N. H., 371; Umsted v. Buskirk, 17 Ohio St., 114; Van Pelt v. Gardner, 54 Neb., 701; Clarke v. Cold Springs Opera House Co., 58 Minn., 16; Dunston v. Hoptonic Co., 83 Mich., 372; Woods v. Wicks, 75 Tenn., 40; Whitman v. National Bank, 176 U. S., 559.

6. **CORPORATIONS.  Organization.  Powers.  Other states.**

Rev. St. Me. 1903, ch. 47, sec. 6, providing for the incorporation of companies to carry passengers and freight in other States, and that "in all such cases the articles of agreement and certificate of organization shall state that such business is to be carried on only in States and jurisdictions when and where permissible under the laws thereof" is not void as attempting to create a corporation in one State in which it is prohibited to operate, but is merely restrictive of the right of such corporation to do business, limiting it to the States whose laws also permit its operation. (*Post, p.* 707.)

Code cited and construed: Code 1903, ch. 47, sec. 6.

7. **CORPORATIONS.  Stockholders.  Liability.  Interest.**

The holder of corporate stock is liable for the unpaid balance thereon from the time he receives the stock; and hence the receiver, suing to recover such balance, may recover interest from the date of subscription, although he is not liable for interest where such principal liability is penal. (*Post, pp.* 707, 708.)

FROM SHELBY.

Appeal from the Chancery Court of Shelby County. —FRANCIS FENTRESS, Chancellor.

METCALF & METCALF, for appellant.

CARUTHERS EWING, for appellee.

MR. JUSTICE FANCHER delivered the opinion of the Court.

Complainant is receiver of the Lake View Traction Company, a Maine corporation. This concern undertook to construct an interurban railway running out from Memphis to a point in northern Mississippi, and became insolvent.

The defendant was induced by his friend, the late W. A. Percy, of Memphis, to take stock in the concern. He first on July 31, 1906, put up $1,000 on the assurance of Percy, acting for the traction company, that this was the full extent of his liability. Later, on May 9, 1907, $1,000 of additional stock was issued in his name, and finally, on February 24, 1910, under a representation that it was necessary in order to successfully carry out the enterprise, he agreed to and did pay in $5,000. Preferred stock issued to defendant to the par value of $7,000. The second $1,000 was not paid for, and the sum of $6,000 was the total amount of money paid by defendant. He is not contradicted

in his statement that he did not make these payments as an investment, but in order to assist his lawyer and friend, W. A. Percy.

Defendant also received as a bonus additional common stock to the par value of $4,500, and it is inferred that the second $1,000 of preferred stock was not intended to be paid for. Percy assured Farnsworth that the money he had paid would be his total liability, and Farnsworth did not inspect the certificates, and did not know that he had received any other than the $6,000 of stock for which he had paid. He did not know whether this stock was common or preferred. The record of the corporation shows his receipt, however, for the full amount issued to him, and he retained all this stock until this suit was brought, June 10, 1913.

The company, in all its sales of preferred stock, issued an additional fifty per cent. of common stock as a bonus. Its entire capital, when organized, March 17, 1906, was $50,000, but this was increased by amendment of its charter to $1,000,000; the stock being divided equally, common and preferred. Its charter was filed in Tennessee with the secretary of State.

In addition to a bonded debt of $350,000, there was established and judicially determined unpaid unsecured debts of $119,000, at the time the present suit was brought. Under a general creditors' bill its entire assets were administered and exhausted in payment on certain secured debts, leaving all unsecured debts unpaid.

Thereupon the receiver was ordered to institute such action or actions as may be necessary to recover on account of unpaid stock subscriptions as may be due, for the common benefit of all who may be creditors in the receivership cause, and entitled to have said assets collected.

The present suit is brought to collect of defendant on behalf of the unsecured creditors the $5,500, being the amount of the face value of the capital stock of the traction company, issued to defendant for which it is conceded he did not pay anything, either in money or services.

The chancellor rendered a decree against defendant for $5,500, with interest from June 24, 1910, date of the last delivery of stock to defendant.

The defendant has appealed, and upon his assignment of errors presents a number of propositions to determine.

It was not necessary to make defendant liable to the responsibilities of a stockholder that he should have formally subscribed for stock. The fact that he receipted for, accepted, and held the certificates, rendered him amenable to all the responsibilities attaching in favor of unsecured creditors. *Upton* v. *Tribilcock,* 95 U. S., 45, 47, 23 L. Ed., 203; *Chubb* v. *Upton,* 95 U. S., 665, 24 L. Ed., 523; *Sanger* v. *Upton,* 91 U. S., 56, 23 L. Ed., 220; Thompson's Liability of Stockholders, sec. 105; *Jackson* v. *Traer,* 64 Iowa, 469, 20 N. W., 764, 52 Am. Rep., 456; *Calumet Paper Co.* v. *Stotts,* 96 Iowa, 147, 64 N. W., 782, 59 Am. Rep., 362;

*Clevenger* v. *Moore,* 71 N. J. Law, 148, 58 Atl., 88; *Dunn* v. *Howe* (C. C.), 96 Fed., 160; *Barron* v. *Burrill,* 86 Me., 66, 29 Atl., 939; Id., 86 Me., 72, 29 Atl., 938 (two cases); Cook on Corporations, p. 251, sec. 52; *Shickle* v. *Watts,* 94 Mo., 410, 7 S. W., 274.

The two cases of *Barron* v. *Burrill* are especially appropriate to this question. It would be highly dangerous to absolve a stockholder from liability because it appeared from his own statements that he did not remember or did not know that he had receipted for and held bonus stock in a corporation. Very many might escape the liability if this were so.

What are the laws of Maine upon the subject? We quote from the Code of Maine, 1903, as follows:

Chapter 47, sec. 50:

"Any corporation may . . . issue stock for services rendered to such corporation and the stock so issued shall be full paid stock and not liable to any further call or payment thereon; and in the absence of actual fraud in the transaction, the judgment of the directors as to the value of the . . . services rendered, shall be conclusive."

Chapter 47, sec. 87:

"The capital stock subscribed for any corporation is declared to be and stands for the security of all creditors thereof; and no payment upon any subscription to or agreement for the capital stock of any corporation, shall be deemed a payment within the purview of this chapter, unless *bona fide* made in cash, or in some

other matter or thing at a *bona fide* and fair valuation thereof.''

Chapter 47, sec. 89:

''Any person having such judgment [i. e., on claims enumerated in section 88], or any such trustees, receivers or other persons appointed to close up the affairs of an insolvent corporation, may, within two years after their right of action herein given accrues, commence an action on the case or bill in equity, without demand or other previous formalities, against any persons, if a bill in equity, jointly or severallly, otherwise severally, who have subscribed for or agreed to take stock in said corporation and have not paid for the same; . . . and in such action they may recover the amount of the capital stock so remaining unpaid or withdrawn, not exceeding the amounts of said judgments or the deficiency of the assets of such insolvent corporation. But no stockholder is liable for the debts of the corporation not contracted during his ownership of such unpaid stock, nor for any mortgage debt of said corporation; and no action for the recovery of the amounts hereinbefore mentioned shall be maintained against a stockholder unless proceedings to obtain judgment against the corporation are commenced during the ownership of such stock, or within one year after its transfer by such stockholder is recorded on the corporation books.''

It is said that the laws of Maine were not properly pleaded.

It is necessary to allege and prove the statutes of another State in order to pursue a remedy afforded or enforce a liability existng under such laws. *N. & C. R. Co.* v. *Sprayberry,* 9 Heisk., 852; *Railroad* v. *Foster,* 10 Lea, 351; *Railway Co.* v. *Lewis,* 89 Tenn., 235, 14 S. W., 603; *Kelley Bros.* v. *Fletcher,* 94 Tenn., 1, 28 S. W., 1099; *Harris* v. *Water & Light Co.,* 114 Tenn., 328, 348, 85 S. W., 897; *Mandel* v. *Swan, etc., Co.,* 154 Ill., 177, 40 N. E., 462, 27 L. R. A., 313, 45 Am. St. Rep., 124; *Ball* v. *Anderson,* 196 Pa., 86, 46 Atl., 366, 79 Am. St. Rep., 693; *Rice* v. *Merrimack Hosiery Co.,* 56 N. H., 114; *Salt Lake, etc., Bank* v. *Hendrickson,* 40 N. J. Law, 52; *Nashua, etc., Bank* v. *Anglo-Amer. etc., Co.,* 189 U. S., 221, 23 Sup. Ct., 517, 47 L. Ed., 782.

We think, however, the complainant was excused in this case from setting up the statutes and laws of Maine:

(a) Because the answer of defendant pleads those laws, averring:

"The defendant claims that the rights of the parties are to be determined by the laws of Maine, which, without further proof, may be taken and treated as shown in the public statutes, and decisions of the supreme court of Maine."

(b) Because the agreed stipulation of proofs made by the parties filed as exhibit a copy of the Revised Statutes of the State of Maine in relation to unpaid stock subscriptions. The only qualification to the agreement was that:

"Defendant did not know the Maine laws and denies their materiality."

There is no exception by defendant to the introduction of the laws on the ground that they were not pleaded.

Defendant did not set forth the statutes of Maine in his answer, but insisted they were controlling, and agreed that they may be taken and treated as shown in the public statutes and decisions of the supreme court of Maine. He will not be allowed on appeal to take a position so contrary to his pleading and proposed agreement made of record.

The insistence is, further, that the action cannot be maintained, except under the statutes of Maine, and these laws only provide a remedy in case of "subscription to or agreement for the capital stock." In *Barron* v. *Burrill*, 86 Me., 72, 29 Atl., 938, involving the question, the court said:

"An actual taking of shares is equivalent to subscriptions or an agreement to take. Either comes within the meaning of the statute."

That was a rational and practical construction of the statute. Defendant received and receipted for the shares sued on, and he should not be heard to say that he did not know or remember of the transaction.

Another proposition presented is that the stock was issued to defendant as a result of the action of the board of directors on account of what they thought was or would be valuable services rendered by the de-

fendant, and no proper pleading impeached that action.

The Maine Code (Rev. St. 1903, ch. 47, sec. 50), hereinbefore set out, authorizes the corporation to "issue stock for services rendered to the corporation, and the stock so issued shall be fully paid stock and not liable to any future call or payment thereon," and that "in the absence of actual fraud in the transaction the judgment of the directors as to the value of the services shall be conclusive."

The bill charged in effect that for the stock here in question Farnsworth rendered no service to the company which was a valuable consideration, thereby impeaching the pretended consideration of services rendered.

The proof showed that on April 19, 1906, a resolution was passed by the board of directors providing:

"That the president and secretary be directed to issue every subscriber of one share of preferred stock a like amount of common stock upon the payment in full of the preferred stock."

It also appeared that $1,000 of the common stock was issued to defendant after a resolution had been passed providing for the issuance to certain named individuals, including defendant, each $1,000, "in consideration of the services rendered by the several parties hereinafter named during the past year."

It is argued that inasmuch as it appears that Mr. Farnsworth was a man of wealth and prominence in Memphis, and that other men of high standing sub-

scribed for stock subsequent to the time Mr. Farns-
worth did, it is clear that the company considered the·
connection of Mr. Farnsworth with the company and
his investment therein as the rendition of such services
as would justify the company in issuing to him the
common stock, Mr. Farnsworth testified that he did
not render any services and paid nothing for the stock,
except $6,000 for the $6,000 preferred stock. So on
his own statement nothing was paid in money or
services for $1,000 of preferred stock and $4,500 of
common stock issued to him. But his learned counsel
says for him that, though he rendered no service con-
sidered valuable by him, the common stock was issued
in the belief of the officials of the company that he had
rendered valuable services, and that their judgment
under the Maine act cannot be impeached, except under
proper averment and proof to impute actual fraud.

The issuance of common stock was to all purchasers
of preferred stock, and cannot be considered as in
contemplation of services rendered. In reality it was
issued purely as a bonus, as was also the issuance of
the $1,000 of preferred stock issued to defendant, for
which he paid nothing. The issuance of the stock for
pretended services was sufficiently attacked as a fraud,
for while it is not so denominated in the bill in exact
words, yet the issuance of all this stock is attacked,
and it is distinctly averred that no consideration was
paid for it. This is a sufficient attack within the Maine
statute.

The remedy of the creditor to finally look to stockholders who have not paid in full for their stock after the other assets have proven inadequate is applied by the American courts generally. The capital stock, especially unpaid subscriptions, constitute, in equity, a trust fund for the benefit of creditors, and the stockholders may be compelled to make payment upon his stock to its par, if so much is necessary to pay debts. Shannon's Code, sec. 2058; *Sweeney* v. *Railroad,* 118 Tenn., 297, 314, 100 S. W., 732; *Jones* v. *Whitworth,* 94 Tenn., 602, 30 S. W., 736; *Shields* v. *Clifton Land Co.,* 94 Tenn., 123, 28 S. W., 668, 26 L. R. A., 509, 45 Am. St. Rep., 700; *Cartwright* v. *Dickinson,* 88 Tenn., 476, 12 S. W., 1030, 7 L. R. A., 706, 17 Am. St. Rep., 910; *Railroad* v. *Parks,* 86 Tenn., 560, 8 S. W., 842; *Morrow* v. *Iron & Steel Co.,* 87 Tenn., 265, 10 S. W., 495, 3 L. R. A., 37, 10 Am. St. Rep., 658; *Chase* v. *Railroad Co.,* 5 Lea, 415; *Kelley* v. *Fletcher,* 94 Tenn., 1, 28 S. W., 1099; *Upton* v. *Tribilcock,* 91 U. S., 47, 23 L. Ed., 203; *Washburn* v. *Green,* 123 U. S., 30, 10 Sup. Ct., 280, 33 L. Ed., 516; *Appleton* v. *Turnbull,* 84 Me., 72, 24 Atl., 592; *Trust Co.* v. *Loan Co.,* 92 Me., 448, 43 Atl., 24; Cook on Corporations, sec. 199; Beach, Private Corporations, secs. 113, 116; Thompson, Liability of Stockholders, secs. 10, 11.

In Tennessee it should appear that the other assets have been or are being collected, and are insufficient to pay debts, and an account must be taken, and an order made in the nature of a call upon stockholders for unpaid subscriptions, and this must be made ratably, so

as to be equal and uniform. *Simmons* v. *Taylor,* 106 Tenn., 740, 63 S. W., 1123.

And it is held in several jurisdictions, in accord with the Tennessee rule, that equality and complete justice should be meted out, and to this end all the solvent stockholders within the jurisdiction should be joined, at least where it is practicable to do so. *Adler* v. *Mil. Pat. Brick Mfg. Co.,* 13 Wis., 57; *Patterson* v. *Lynde,* 112 Ill., 196, 205; *Vick* v. *Lane,* 56 Miss., 681; *Pierce* v. *Construction Co.,* 38 Wis., 258; *Hadley* v. *Russell,* 40 N. H., 109; *Erickson* v. *Nesmith,* 46 N. H., 371; *Umsted* v. *Buskirk,* 17 Ohio St., 114; *Van Pelt* v. *Gardner,* 54 Neb., 701, 75 N. W., 874; *Clarke* v. *Cold Springs Opera House Co.,* 58 Minn., 16, 59 N. W., 632; *Dunston* v. *Hoptonic Co.,* 83 Mich., 372, 47 N. W., 322; Thompson on Stocks & Stockholders, art. 447.

The practice of bringing the various parties interested before the court in order to properly apportion the liability of each delinquent stockholder is the better practice in our opinion. But, under the Maine statute, each separate stockholder may be sued. The objection made by defendant is that the bringing of only one stockholder before the court, which this method permitted under the laws of Maine, is special and exclusive to that State, and will not be enforced in Tennessee, because it is not in harmony with our laws. He cites Heliwell on Stocks and Stockholders and opinions of a number of courts.

Many cases cited are upon statutes creating an additional personal liability to the extent of the par value

of the stock to pay creditors, such, notably, as the national banking laws. These statutes impose an added liability of the stockholder, and such liability is a creature of the statute and somewhat penal in its nature. *Woods* v. *Wicks,* 7 Lea, 40. We will not confuse authorities applying to those statutes with the right, based upon public policy, of creditors to require that corporations with which they deal shall hold, as the equivalent of all stock issued, full value in money, property, or valuable services, and that bonus stock has not been issued to promotors or others, whether it be for mere influence or otherwise.

Our own courts favor this right, and the only difference is that the laws of Maine permit suits severally at law, or in equity either jointly or severallly, without reference to equality of obligation, while this court has indicated its preference that equity, so far as practicable, should be worked out and the liability prorated. The question then is: Will the courts of Tennessee enforce the action against one stockholder?

The liability of a stockholder in a foreign corporation for the debts of such corporation is to be determined by the laws of the State of incorporation. If the liability is in the nature of contract, and is not opposed to the legislation or public policy of the State in which it is sought to be enforced, the courts will enforce it. If the liability is penal in its nature, it will not be enforced outside of the State creating it. *Woods* v. *Wicks,* 7 Lea, 40.

132Tenn.45

This is not a penal statute, and the remedy given, while statutory, is in accord with the law of Tennessee, except the feature that this is a suit against one stockholder alone, and does not seek to adjust the equities.

Inasmuch as our courts favor the right sought to be enforced, the mere difference in the form of the remedy is not so materially opposed to the public policy of this State as to justify a refusal to recognize, *ex comitate,* the mode of procedure provided by the laws of Maine.

But, regardless of comity, it is the duty of the court to enforce this obligation in the manner provided by the laws of Maine. This obligation is in a sense contractual, for every creditor deals with the corporation in view of the statutes of the State of its organization, and the obligation arises upon the contract of subscription to the capital stock of the corporation. The action to enforce the same is transitory. It may be brought in any court having jurisdiction of such matters in any State where personal service can be made upon a stockholder. See *Whitman* v. *National Bank,* 176 U. S., 559, 20 Sup. Ct., 447, 44 L. Ed., 587.

It is said that the Lake View Traction Company was incorporated under a statute of Maine which forbids it doing business in that State; that no state is bound to recognize laws of one State which undertake to organize a corporation and by the very act of incorporation oust it from that State; that to do so would be to recognize the right of one State by an act

of sovereignty to legislate into being an artificial body for some other State.

Counsel for defendant quotes from Code of 1903, p. 434, ch. 47, sec. 6, insisting that this authorizes a charter which must go into other States. This section in part as quoted is as follows:

"In all such cases the articles of agreement and certificate of organization shall state that such business is to be carried on only in States and jurisdictions when and where permissible under the laws thereof," etc.

Counsel then quotes from the charter of the Lake View Traction Company, as follows:

"All such powers are to be exercised and such business is to be carried on only in other States and jurisdictions when and where permissible, under the laws thereof."

It is to *only* do business where permissible, but we fail to see by the language that it ousts the corporation from the State of Maine.

We think defendant's contention as to interest is not sound. He insists that no right of action arose on behalf of the receiver for this unpaid stock until it was found that the other assets were insufficient to pay debts, and from this assumption he reasons that interest is not chargeable.

There are many authorities holding that interest cannot be charged under statutes providing individual, proportionate or double liability beyond the par value of the stock. The reasoning is sound as to actions of that nature because no liability exists against the

stockholder for individual liability until the necessity for its collection arises. That liability does not attach until the assets of the corporation prove inadequate. In this case, however, the liability to pay the par value of all stock arose from the time the stock was received. The act of the officials in granting a bonus of stock was in violation of law and *ultra vires*. The statute of Maine provided that no payment should be deemed a payment within the purview of that chapter, unless *bona fide* made in cash or in some other matter or things at a *bona fide* and fair valuation thereof. Therefore, since the cause of action arises from an illegal issuance of the stock, the interest must be counted from that time. The failure to require payment for all stock issued no doubt materially contributed to the insolvency.

The decree of the chancellor is in all things affirmed.