HORACE HAMBY, Receiver, etc., v. JOHN S. FOUCHE et al.

Eastern Section. May 27, 1932.

Petition for Certiorari denied by Supreme Court, December 17, 1932.

John Ross Scott and Chas. C. Moore, both of Chattanooga, for appellants.

Thompson & Ballard, of Chattanooga, for appellee.

FAW, P. J.   The bill in this case was filed in the Chancery Court of Hamilton County on November 1, 1930, by Horace Hamby, Receiver of Hamilton Printing Company, against John S. Fouche and T. G. Bush, Jr., citizens and residents of Hamilton County, Tennessee, to recover a judgment against said defendants for $8,900 as the face or par value of eighty-nine shares of common stock in the Hamilton Printing Company, which shares, it is alleged, were issued to the defendants and received and accepted by them, and which were never paid for.

A bill brought by the Clements Paper Company in the Chancery Court of Hamilton County was sustained as a general creditor's bill to wind up the Hamilton Printing Company (a Tennessee corporation with its principal place of business at Chattanooga, Tennessee) as an insolvent corporation, and Horace Hamby, the present complainant, was appointed Receiver thereof, and, upon a finding that it will be necessary, in order to discharge the indebtedness of the Hamilton Printing Company, for the Receiver to collect in full all amounts due said corporation on account of any stock issued without a valid consideration having been paid therefor, the Receiver was, by decretal order in said case of Clements Paper Company et al. v. Hamilton Printing Company, authorized, empowered and directed to bring suit or suits for the collection of any unpaid subscriptions to the capital stock of the Hamilton Printing Company, which order further provided that "said Receiver is expressly authorized, empowered and directed to bring suit or suits against T. G. Bush, Jr., and John S. Fouche for the purpose of collecting from them · any amount or amounts owing by them, or either of them, by reason of the issuance to them of stock in said Company."

Defendants Fouche and Bush answered the bill of the Receiver in the instant case, denying material averments thereof and interposing defenses which will appear later herein. Proof was taken and filed on behalf of the parties, respectively, in the form of depositions of witnesses, with exhibits thereto, and the record in the case of First National Bank v. F. E. Pickard et al., theretofore tried in the Chancery Court of Hamilton County, and the case was thereafter heard by the Chancellor on the bill, answer and proof, whereupon it was

adjudged and decreed that the complainant is entitled to recover of and from the defendants John S. Fouche and T. G. Bush, Jr., the sum of $8,700, together with interest thereon from November 1, 1930, or so much thereof as may be necessary to pay in full amounts due creditors of the Hamilton Printing Company, and the cause was thereupon referred to the Master, with directions to take and state an account showing the amount necessary to pay creditors of the Hamilton Printing Company in full after exhaustion of the other assets of the Company.

Defendants Fouche and Bush excepted to the aforesaid decree and prayed an appeal to this Court, which appeal was granted by the Chancellor and perfected by the defendants.

In this Court the appellants have filed nine assignments of error, but only one of these assignments—the ninth—is leveled directly at the decree of the Court. This is, in effect, admitted in the appellants' brief, wherein it is said that "the first eight assignments allege error committed by the Chancellor in the premises and reasoning by which he reached the conclusion that appellants are liable in this case." Such assignments may be quite inconclusive. Where the lower Court decides a case correctly, but upon an erroneous ground, the appellate court will affirm the decree, basing its decision upon what it conceives to be the correct theory. Sheafer v. Mitchell, 109 Tenn., 181, 183, 193, 71 S. W., 86; Chambers v. Chambers, 92 Tenn., 707, 714, 23 S. W., 67; Railway Company v. Wilson, 90 Tenn., 271, 16 S. W., 613; Terrell v. Murray, 2 Yerg., 384, 390; Brooks v. Paper Co., 94 Tenn., 701, 705, 31 S. W., 160.

It would seem to be a necessary corollary of the rule just stated that assignments which do not assert error in the decree appealed from, but merely challenge the soundness of reasons which moved the Chancellor to render such decree, are insufficient as assignments of error within the contemplation of the rules of this Court and the Supreme Court. However, as the appellants here assert, through their ninth assignment, that the decree is erroneous, we may examine the first eight assignments to ascertain whether or not the grounds upon which the learned Chancellor rested his decree are sound. If they are, we need not look for other support for the decree.

The Chancellor filed a written opinion, containing his findings of fact and conclusions of law thereon, which opinion is in full as follows:

"In the case of the Clements Paper Company v. Hamilton Printing Company, pending in this court, the bill was sustained as a general creditors' bill to wind up the defendant therein as an insolvent corporation and Horace Hamby was appointed receiver thereof. As such receiver and acting under a special order in that cause the said receiver has filed the bill in the present

cause to recover of the defendants the par value of certain shares of the common stock of the Hamilton Printing Company, for which certificates were issued to the defendants but which it is alleged were never paid for. The certificates in question are the following, viz: Certificate No. 6 dated April 18, 1928, for one share issued to the defendant Fouche; certificate No. 7 dated April 18, 1928, for one share issued to the defendant Bush, and certificate No. 8 dated July 9, 1928, issued to T. G. Bush, Jr., and John S. Fouche, Trustees, for 150 shares, in which it is alleged were included 87 shares that have not been paid for, making a total of 89 shares unpaid.

''The defendants in their answer allege that they were intimate personal friends of one Frank E. Pickard, who was operating the Hamilton Printing Company and represented to them that he was the owner of all of the capital stock of said corporation and that it was fully paid for, which representation they believed and relied upon. As to the certificates for one share of stock that was issued to each of them on April 18, 1928, they say that at said Pickard's request they accepted the office of directors in said Company and that at his instance and upon his representation that it was necessary in order to qualify them as directors, said two certificates of stock were issued to them, which they accepted believing that it was stock owned by Pickard and that immediately upon the issuance of said certificates they endorsed the same back to him. As to the certificate No. 8 for 150 shares of the common stock, they say that this certificate was issued to them in connection with a certificate for 75 shares of the preferred stock of the Company, also issued to them as trustees, and that both of said certificates were issued for the purpose of being hypothecated to the First National Bank of this City as security for a note for $7,500 which they executed to the Bank on which they borrowed $7,500 for the use and benefit of the Hamilton Printing Company. They deny that they ever subscribed directly or indirectly for any of the stock of said corporation either common or preferred, and say that all they did was without any expectation of profit to themselves but solely for the accommodation and assistance of their friend Frank E. Pickard and in reliance upon his representation that all of the common stock of the company was fully owned by him and fully paid for.

''The facts are as follows:

''Prior to January, 1926, F. E. Pickard, mentioned in the answer of the defendants, had been doing a general printing and publishing business in this City under the name of the Hamil-

ton Printing Company, and in that month decided to incorporate it under the same name. A charter was obtained dated, January 26-28, 1926, for a corporation with a capital stock of $25,000 divided into 250 shares of $100 each, and on February 3, 1926, Pickard assigned and transferred to the corporation all the assets of this said business for 140 shares of the capital stock, the corporation to assume all the indebtedness of the business. Included in the indebtedness of the business was $2,000 owing to one C. M. Dean, who agreed to take stock in the corporation for his debt. Certificates of stock were not issued, however, until November 10, 1926, when Pickard caused certificates to be issued as follows: Certificate No. 1 to F. E. Pickard for 100 shares; Certificate No. 2 to F. E. Pickard for 38 shares; Certificate No. 3 to Mrs. F. E. Pickard (his wife) for 1 share; Certificate No. 4 to B. M. Pickard (his mother) for 1 share; Certificate No. 5 to C. M. Dean for 20 shares.

"This was the situation of the stock account as shown on the stubs of the stock certificate book when the affairs of the Hamilton Printing Company were first brought to the attention of the defendants in the latter part of 1926.

"The defendants had become acquainted with Pickard a few years previous through their membership in the Masonic order and they had become intimate friends of his. Pickard first approached Fouche for advice in regard to the management of his printing and publishing business. He furnished Fouche at the latter's request a statement or two which were unsatisfactory in form, showing the condition of his affairs, and finally, on November 9, 1926, wrote him the letter which is filed as Exhibit No. 1 to his deposition in this cause. From this letter I quote the following:

" 'We are incorporated for Twenty-five Thousand Dollars. At the first meeting of the incorporators, I was paid Sixteen Thousand Dollars in stock for my equity in the business and issued the stock as follows, or rather I intend to issue it:

| | |
|---|---|
| F. E. Pickard | $13,800 |
| Mrs. F. E. Pickard | 100 |
| Mrs. B. M. Pickard | 100 |
| C. M. Dean, Wartrace | 2,000.' |

"Thereupon Fouche advised him to change his bank account from the small bank he had been doing business with to the Volunteer Branch of the First National Bank, which he did, and Fouche guaranteed a line of credit for the Hamilton Printing Company not to exceed $4,000.

254

"On or about April 18, 1928, at Pickard's instance, Bush and Fouche became directors of the Hamilton Printing Company, and Fouche was elected President and Bush was elected Secretary of the Company. It was at this time that the two certificates Nos. 6 and 7 for one share each of the common stock were issued to Bush and Fouche, respectively. Pickard represented to them that it was necessary in order for them to be directors. At least one of these certificates, that of Mr. Fouche, was immediately endorsed by him and delivered to Pickard. The same is probably true of the certificate issued to Mr. Bush, although there is a recital in minutes of the directors' meeting of January 23, 1930, that this latter certificate had been lost but had not been signed for by Mr. Bush and it was ordered cancelled. Said two certificates were original issues, that is to say, they were not deducted from the shares owned by Pickard, and they were not paid for.

"On June 11, 1928, Fouche gave the Bank an additional guaranty of credit to the Hamilton Printing Company up to $7,000. Pickard testifies that he was not aware of Fouche's giving of these guaranties, but I do not believe his statement on this subject.

"On June 25-29, 1928, the charter of the Company was amended so as to increase the authorized capital stock to $35,000 and provide for the issuance of $10,000 7 per cent cumulative preferred stock, divided into 100 shares of $100 each. At this time the indebtedness of the Hamilton Printing Company to the Volunteer Branch of the First National Bank had been increased to $7,500, represented by its notes held by the Bank, which were then due.

"On July 9, 1928, there were issued to T. G. Bush, Jr., and John S. Fouche, trustees, certificate No. 1 from the Preferred Stock book of the Company for 75 shares of its preferred stock and certificate No. 8 from the Common Stock book, likewise to them as Trustees, for 150 shares of common stock. That latter certificate is the main subject of the present litigation, and the facts in regard to it will be stated more in detail later on. It is sufficient at present to say that of the 150 shares of common stock represented by said certificate No. 8, 63 shares came out of the 138 shares standing in the name of Pickard and 87 shares were an original issue. Said 87 shares were never paid for. The 75 shares of preferred stock represented by said certificate No. 1 of Preferred Stock, were paid for in the following manner. Bush and Fouche borrowed from the First National Bank the sum of $7,500, for which amount they gave the Bank their joint note and pledged the certificate for 75 shares of the preferred

stock and the certificate for 150 shares of common stock as collateral thereto. The proceeds of said note was placed to their credit as trustees upon the books of the Bank, and thereupon they gave the Hamilton Printing Company their check of $7,500 in payment for the 75 shares of the preferred stock that was issued to them as aforesaid. The Printing Company deposited the check to its credit in the Bank and used the proceeds to discharge its indebtedness of $7,500 owing to the Bank. Mr. Fouche insists that the $7,500 obtained upon the issue of the 75 shares of preferred stock was for the purpose of expanding the business of the Printing Company and not for the purpose of paying its indebtedness to the Bank. In this I think he must be mistaken. As stated, the money was used for the latter purpose, and the close sequence of events together with the fact that the notes of the Printing Company to the Bank were then due hardly leaves room for doubt that the money obtained for the preferred stock was intended to be used to take up the Printing Company's note. This, however, is not in my opinion a material matter now.

"The foregoing seems to me a sufficient outline of the undisputed facts preceding and attending the issuance of the stock in controversy, but there are some other facts which were stated and relied on in argument, and I proceed to state them also.

"In October, 1929, the Printing Company found itself in need of more money and on the 15th of that month a meeting of the Board of Directors was held at which were present directors Fouche, Bush and Pickard, and there was also present attorney J. Ross Scott 'with whom Mr. Fouche, and Mr. Pickard had conferred regarding corporation matters.' The minutes of that meeting, written up by Mr. Scott, contains the following recital.

"Messrs. Fouche and Bush agreed to take an additional $2,500 preferred stock (making the total issued $10,000) as trustees for the use and benefit of Frank E. Pickard, and not for themselves, upon the condition that the note for the $10,000 be signed by both Mr. and Mrs. F. E. Pickard and B. M. Pickard, mother of F. E. Pickard. Mr. Pickard announced that his wife and mother would sign the note.'

"Such a note, due at 90 days, was executed to the Bank and secured by the deposit as collateral of the 75 and 25 shares of preferred stock, the 150 shares of common stock and also a policy of insurance for $10,000 upon the life of Pickard. The proceeds of this note were used to take up the note of Bush and Fouche for $7,500 and to obtain $2,500 additional with which to pay for 25 additional shares of the preferred stock, which was issued by certificate No. 2 to Bush and Fouche, Trustees. At this meet-

ing, also, Mr. Scott announced that the minutes of the corporation did not appear as having been written up for a matter of two years except one meeting in February, 1929. Pickard testifies that as a matter of fact he made minutes of the various meetings on loose sheets of paper and placed them in the minute book, which he turned over to Clifford D. Buffon who did not return them. Buffon denies this. However, this may be, at said meeting on October 15, 1929, Mr. Scott was instructed to bring the matters up to date as far as possible. This he did in collaboration with Pickard and the others, and the minutes so gotten up are filed as Exhibits 1 to 7 of his deposition in this cause, including his minutes of two subsequent meetings held on December 31, 1929, and January 23, 1930, respectively.

"The first audit of the Company by Mr. Buffon was made in January, 1929. (He made a report upon the condition of the Company in January, 1930, but this he said was not the result of an audit.) In this audit made in January, 1929, and in his comments thereon, he called attention more than once to the fact that 87 shares (changed by him to 90 shares) of the 150 shares of common stock represented by certificate No. 8 appeared to have been issued without being paid for and recommended that the same be 'recalled.' He also called attention to the fact that none of the stub receipts for stock that had been issued had been signed, and recommended that this be done.

"When Mr. Scott looked into the affairs of the Printing Company in the latter part of 1929 he discovered two things, viz, he discovered that, to use his own expression, the Company was 'about to go upon the rocks.' As a matter of fact, within 30 days after the additional capital of $2,500 was obtained by the issuance of said last 25 shares of preferred stock, Pickard, who had been managing it, abandoned the business, tendered his resignation to Fouche as President and went to Florida to seek other employment. He returned, however, after a week or ten days. Mr. Scott also read the Buffon audit and saw the fact noted that 87 (90) of the shares of common stock included in Certificate No. 8 had (not) been paid for, and he set about to have that situation corrected. On December 31, 1929, a meeting of the directors was held at which were present directors Fouche, Bush and Pickard and Mr. Scott, and the following action was taken:

" 'Vice-President Pickard advised that the auditor had called attention to an error in the issuance of common stock; whereupon, on motion of F. E. Pickard, seconded by T. G. Bush, Jr., $9,000 in common stock was withdrawn, same to be effective after $6,000 from the stock issued to John S. Fouche and T. G. Bush,

Jr., as trustees for F. E. Pickard, and not for themselves, and $3,000 from the stock issued to F. E. Pickard.'

"On January 23, 1930, another meeting of directors was held at which Fouche resigned as President and Director and Bush resigned as Secretary and Director. Thereupon the following action was taken, viz:

" 'In view of the resignation of T. G. Bush, Jr., and John S. Fouche as officers and directors of the Hamilton Printing Co., the trusteeship of these gentlemen was terminated. The stock issued to them both as trustees and as collateral is hereby ordered transferred to F. E. Pickard, for whose beneficial interest it had been held. These matters have been covered by notes, one of which is now past due at the First National Bank, Volunteer Branch.'

"The notes so referred to in this minute were a note for $3,000 signed by Fouche and Bush not then due, but which they have paid or will have to pay, and the note for $10,000, mentioned in the minutes of October 15, 1929. This latter note was past due at the time of meeting of January 23, 1930, and was taken up by a note for the like sum executed by Pickard, his wife and his mother to Fouche and Bush and by the latter endorsed to the Bank. The Bank later sued upon this note in this Court in cause No. 24309 and obtained a judgment thereon against the makers and endorsers, which Fouche and Bush have paid or will have to pay. Many of the facts relating to the affairs of the Hamilton Printing Company were brought out in the evidence in that cause and the record in that cause has by stipulation been made a part of the evidence in this cause. So it will be seen that the defendants have already fared quite badly from their efforts to assist their friend Pickard.

"The 87 (90) shares of common stock ordered to be 'withdrawn' at the meeting of December 31, 1929, were never in fact shown to have been withdrawn by any entry upon the books of the Company. All that was done was this, and the Company was at that time already insolvent, viz: Fouche and Bush back in July, 1928, had assigned both the certificates for the 150 shares of common stock and the certificate for the 75 shares of preferred stock to the Bank in blank. At the meeting of January 23, 1930, or very soon thereafter Mr. Scott obtained these certificates from the Bank and filled in the name of Pickard's wife as assignee with a statement on certificate No. 8 that 90 shares thereof were 'recalled,' but no entry to this effect was made upon the books of the Company, and Mr. Scott, who was attorney for Bush and Fouche, continued to hold the certificates

until the evidence was taken in said suit of the First National Bank.

"The foregoing matters are, I think, all undisputed. Other facts will be stated in connection with a consideration of the several grounds of defense.

"I.

"The defendants say they never subscribed for the 87 shares of common stock or any stock, common or preferred, in the Hamilton Printing Company. It is true that they never formally subscribed for any of said stock, but a formal subscription was not necessary in order to render them liable as stockholders. This is well settled and it seems sufficient to cite only the case of Sullivan v. Farnsworth, 132 Tenn., 691, wherein it was said:

" 'It was not necessary to make defendant liable to the responsibilities of a stockholder that he should have formally subscribed for stock. The fact that he receipted for, accepted, and held the certificates, rendered him amenable to all the responsibilities attaching in favor of unsecured creditors.' They accepted said certificate No. 8. Mr. Fouche signed a formal receipt for it on July 9, 1929, and they pledged this certificate to the Bank as collateral security for their note of $7,500 on July 10, 1928. The negotiations with the Bank for the loan were conducted by them; Pickard had nothing to do with the negotiations, though he must have been fully cognizant of them. The pledging of the certificates was at the instance of the defendants themselves; the Bank did not require any security upon their note.

"II.

"Defendants claim that Pickard represented himself to be the owner of all of the common stock of the Company and that it was fully paid for, and that they accepted said certificate No. 8 in reliance upon that representation. In the first place, I do not think the fact of such representation is made out by the weight of the evidence. Pickard says he made no such representation, albeit his word is not to be accepted where he is uncorroborated. But Bush admits that Pickard made no such representation to him. Fouche says he did not claim to him, but I am constrained to believe that all Pickard represented to Bush was that he owned all of the stock that had been issued except the Dean stock. Pickard had told Fouche how much stock he owned in the letter of November 9, 1928, from which I have already quoted, and Fouche must have known that Pickard had no means of paying for other stock after that date.

"But no matter what Pickard represented, there were the stubs in the stock book showing exactly how much stock had been issued. There were only seven of these stubs prior to the issuance of certificate No. 8, and the most cursory glance at this book would have disclosed that all of the stock had not been issued. This book was evidently accessible to the defendants. In fact Fouche as President signed said certificate. Furthermore, there was a notation upon this stub in Pickard's handwriting as follows:

" '63 shares transferred from certificate Nos. 1-87 shares new.' Pickard says he made said notations on the stub at the time the certificate was issued. This is denied by Fouche, but Mr. Buffon, a wholly disinterested witness, says it was on the stub when he examined it in January, 1929, and he made the further notation in pencil (since erased) that the 90 shares were without consideration and should be recalled. This notation was therefore upon the stub when Fouche signed the receipt for the stub on July 9, 1929; and from that date at least, if not before, the defendants had actual notice that the 87 (90) shares were a new issue and unpaid for.

"Finally the defendants admittedly paid nothing for this stock themselves, and since they were President and Secretary of the Company, although they say that they held these offices only nominally, they will not be heard to say, as against creditors of the insolvent corporation, that they took the stock without knowing that it was unpaid for.

"III.

"Again, it is said that the 87 shares was issued to them as trustees. In the first place, taking the testimony of Fouche, Bush and Pickard together upon this subject, it establishes only this: Pickard verbally assured them that they would never lose a cent by helping the Hamilton Printing Company in the way they did, and it was agreed that when the Company became prosperous he would take the stock off of their hands by repaying them what they paid for the preferred stock. This can hardly be said to be a trust at all. Rather, it was a case of defendants taking the stock with an option or agreement of Pickard to take it back. The very formal statement appearing in the minutes of the meeting of the directors of July 9, 1928, prepared by Mr. Scott and repeated in the minutes of subsequent meetings to the effect that the defendants took the stock as trustees for Pickard and not for themselves did not appear in the minute notes made by Pickard but was a conclusion gathered by Mr. Scott from conferences with these parties.

"In the next place, if it can be called a trust, the beneficiaries and the terms of the trust were nowhere made to appear upon any records of the corporation.

"If this were a case of the rights of a purchaser of the stock from Fouche and Bush as against the beneficiary of the trust, then the presence of the word 'Trustee' after their names in the certificate and on the stub could be important and would be sufficient to put the purchaser upon inquiry. But that is not this case.

"So also where it is sought to enforce against a stockholder the liability imposed by statute against stockholders as stockholders (as in the case of bank stock for example), the weight of authority is that this liability exists only against those who are in fact stockholders or who have allowed themselves to appear upon the books of the corporation as stockholders. In such case the presence of the words 'Trustee,' 'agent' or the like is sufficient to open the door for the party to show that he is not in fact the owner of the stock but that the real, bona-fide owner is another person. Welles v. Larrabee, 35 Fed., 866.

"But this also is not the present case, and, I may add, the proposition just stated is not universally accepted.

"But liability for an unpaid stock subscription, which is the question presented here, is based upon a contract, express or implied, to pay for the stock. Railroad v. Gammon, 5 Sneed, 570; Planing Mill Co. v. Bank, 86 Tenn., 252, 255. In such case the rule applies which obtains in other contracts, that such words as 'trustee,' 'agent' or the like added to the name of the party contracting are merely descriptio personae and do not relieve him from personal liability. See cases collected in note to Andrews v. City Commercial Bank, 57 A. L. R., 772. In July, 1928, when said certificate No. 8 was issued, Pickard was insolvent and has been ever since and is now insolvent.

"IV.

"Finally, it is said that the issue of the 87 shares was cancelled at the meeting in January, 1930. To this there are three answers. 1. The corporation was then insolvent, and it was then too late to cancel the subscription. 2. The attempted cancellation was never entered upon the books of the Company. 3. This defense is not set up in the answer.

"I conclude that defendants are liable, to the extent necessary to pay creditors, for the par value of said 89 shares of stock, with interest from the filing of the bill. Under the circumstances they are not chargeable with interest before that time. A ref-

erence to ascertain the amount necessary to pay creditors after the exhaustion of the assets of the company.

"Decree accordingly,

"Garvin,

"Chancellor."

The defendants below filed a petition for a re-hearing, which petition the Chancellor granted to the extent only of holding that defendants were not liable for the two shares of stock issued—one of each of the defendants—on April 18, 1928. In all other respects defendant's petition for a re-hearing was overruled and a decree was entered as we have before stated.

Appellants' first assignment is that "the Chancellor erred in holding that appellants were chargeable with knowledge from the stock stub books that the issuance of this certificate No. 8 made outstanding stock in excess of the amount for which the corporation had been paid."

We concur in the finding and opinion of the Chancellor on this point. Moses v. Ocoee Bank, 1 Lea, 398, 407.

The second assignment questions the Chancellor's finding of fact "that 87 shares of certificate No. 8 were issued from new stock and had not been paid for to the corporation."

This finding of the Chancellor is, in our opinion, supported by the record.

We do not understand the Chancellor as holding that the pledge of 150 shares of common stock to the First National Bank "made appellants liable for this stock," as asserted in the third assignment. Such pledge of the stock by defendants, as security for their note, was stated by the Chancellor as one of the circumstances tending to show that defendants accepted said stock and treated it as their property—not that the pledge of the stock to the Bank ipso facto made appellants liable therefor.

The fourth assignment is that "the Chancellor erred in holding that the cancellation of this overissue of common stock was not complete because not entered on the account books of the corporation."

The Chancellor found that "the attempted cancellation was never entered upon the books of the Company," and this finding is supported by the proof. Mr. Scott, attorney for defendants, procured said certificate No. 8 for 150 shares from the Volunteer Branch of the First National Bank in January, 1930, and made thereon a notation that 90 shares thereof were "recalled by action Board of Directors," but he retained the certificate in his possession and did not return it to the stock book or files of the Hamilton Printing Company, and no entry showing such attempted cancellation was made on the books of the Company.

The Chancellor found that the attempted cancellation of 87 shares at the meeting in January, 1930, was futile and ineffective for three reasons, one of which was that the Hamilton Printing Company, "was then insolvent," and that it was therefore too late to cancel the subscription. The appellants' fifth assignment challenges the Chancellor's finding that the corporation was insolvent at the time of said attempted cancellation, but we are of the opinion that the proof amply supports the Chancellor's finding on this point.

The third of the three independent reasons stated by the Chancellor for his conclusion that defendants could not successfully rely on the aforesaid attempted cancellation was that "this defense is not set up in the answer;" and, through their sixth assignment, appellants say that this was error because "the cancellation was set up and sought to be avoided in the bill of complaint and the answer denied complainant's right to recover on the facts alleged."

It is true that the things done by and on behalf of defendants, upon which they are now relying as a "cancellation" of 90 shares of the common stock of the Hamilton Printing Company, are "set up and sought to be avoided" in complainant's bill. In their answer defendants make no specific reference to the allegations of the bill concerning the attempted "cancellation," but, after admitting some of the allegations of the bill with respect to other matters and denying others, defendants conclude their answer with the statement that "all other allegations of complainant's bill not here admitted or denied are now denied generally and as fully as if set out and denied specifically." The general denial just quoted operated as a denial of the allegations of the bill concerning the attempted "cancellation," and defendants were, therefore, not in a position to rely, as an affirmative defense, upon matters which were alleged in complainant's bill but denied in the answer of defendants.

However, if the Chancellor was right in his view that defendants could not successfully rely on the alleged "cancellation" of the 90 shares of Hamilton Printing Company stock for the reasons (1) that the corporation was then insolvent, and (2) that the attempted "cancellation" was never entered upon the books of the Company (and we think he was), the failure of the defendants to plead this defense in their answer is immaterial to the result.

The seventh assignment is that "the Chancellor erred in holding appellants estopped as against the creditors of this insolvent corporation to say that they did not know this stock issued in their names as trustees had not been paid for because they were at the time nominally officers of the corporation."

It is said for appellants that this was error because (a) "no creditor is shown to have extended credit on the faith of these stock subscrip-

tions;'' (b) ''if there was an estoppel in favor of subsequent creditors who extended credit on the faith of this stock subscription, such estoppel would not inure to the benefit of the corporation or appellee as its Receiver;'' and (c) estoppel is not pleaded in the bill.''

We do not think there is any merit in these contentions. The charter of the Hamilton Printing Company contained the provision of the Act of 1875, chapter 142, sec. 5, carried into Shannon's Code as Section 2058, as follows: ''The amount of any unpaid stock due from a subscriber to the corporation shall be a fund for the payment of any debts due from the corporation. The transfer of stock by any subscriber shall not relieve him from payment, unless his transferee has paid up all or any of the balance due on said original subscription.''

Speaking with reference to the above quoted statutory charter provision, in the case of Shields v. Clifton Hills Land Co., 94 Tenn., 123, 158, 28 S. W., 668 (quoted and re-affirmed in Jones v. Whitworth, 94 Tenn., 602, 609, 30 S. W., 736), the Court said:

''This provision was properly incorporated into the charter of the Clifton Hill Land Company, and is binding on all stock subscribers. What does it mean? What is made a fund for the payment of debts? 'Any unpaid stock.' What debts are contemplated? 'Any debts due from the corporation.' 'Any unpaid stock' means all unpaid stock, and 'any debts due from the corporation' means all debts due from the corporation— that is to say, all unpaid stock shall be a fund for the payment of all debts of the corporation. No subscriber for unpaid stock can escape liability, and no corporate debt shall go unpaid, so far as the capital stock is concerned. The liability attaches to all subscribers; the security extends to all creditors. No subscriber whose stock remains unpaid can escape liability, and no creditor who had a valid debt can be denied his security. Nothing is said in the statute with respect to the time the subscription shall be made, nor as to the time the debts shall be created. No limitation is made in either case. The clear and plain meaning of the statute is that all unpaid stock, whenever subscribed, shall be a fund for the payment of all corporate debts, whenever created.''

Obviously the liability of a delinquent stockholder does not rest on estoppel, but upon the affirmative provisions of the statute, and there was no occasion for complainant to plead as an estoppel that credit had been extended to the corporation on the faith of the defendants' stock subscriptions.

The appellants' eighth assignment is that ''the Chancellor erred in holding that these 150 shares of stock was not issued in the name

of appellants, as trustee for F. E. Pickard, but under an option agreement for its purchase by Pickard.''

Our examination of the record and briefs has led us to the conclusion that the Chancellor was right in his finding that the record did not show that appellants held said stock as trustees for F. E. Pickard, but ''rather, it was a case of defendants taking the stock with an option or agreement of Pickard to take it back;'' and we concur therein.

Appellants' ninth (and last) assignment is as follows:

''The Chancellor erred in holding that appellee, as Receiver of the Hamilton Printing Company, could recover against appellants in this case, because:

''(a) Appellants never subscribed for this eighty-seven shares of stock for which they are held liable.

''(b) This stock showed on its face that it was held by appellants as trustees. This was notice to the corporation that the stock was held in a representative capacity, and put it on inquiry as to the true ownership. Moreover, the corporation knew that this trusteeship was a 'dry trust,' that legal title to this stock vested in F. E. Pickard as the true owner, and the resulting liability to the corporation for this stock was the liability of F. E. Pickard and not the liability of these appellants. Neither the creditors nor the Receiver has any higher right than the corporation.

''(c) The corporation issued this stock as paid-up stock. Appellants permitted it to be isued in their names, as trustees, in good faith, upon the assurance that it was fully paid. By the issuance and pledging of this stock, along with seventy-five shares preferred stock the corporation received $7,500 upon the endorsement of appellants, which note they later paid to the First National Bank. Under these facts they are in the position of innocent purchasers, and are not liable to the corporation or its Receiver for this stock.

''(d) Upon discovery by appellants that this stock had been issued by the corporation without consideration, they at once caused same to be cancelled by consent of the corporation and its stockholders, and record of this cancellation was made, both upon the corporate minutes and upon the stock certificate. This cancellation is binding upon the corporation, upon its receiver and upon subsequent creditors. It is not shown that any creditors existing at the time remain unpaid. If there were such the Receiver of the corporation does not represent them as a separate class, and cannot maintain suit in their interest.

"(e) The bill did not make defendants all persons to whom stock had been issued that was not paid for so as to adjust the equities between them. For that reason this bill cannot be maintained."

Our rulings already stated herein embrace, in large measure, our views with respect to the propositions advanced by appellants, as above stated, in support of their ninth assignment.

(1) It was not necessary, in order to make appellants liable to the responsibilities of stockholders, that they should have formally subscribed for stock. The fact that they receipted for, accepted and held the certificates rendered them amenable to all the responsibilities attaching in favor of unsecured creditors. Sullivan v. Farnsworth, 132 Tenn., 691, 696, 179 S. W., 317, and other authorities there cited.

(2) In view of the Chancellor's finding (in which we have concurred) with respect to the character of the agreement under which the stock in question was issued to appellants, the fact that they were described in the certificate as "Trustees" did not relieve them of personal responsibility as stockholders. Heiskell v. Morris, 135 Tenn., 238, 244, 186 S. W., 99; Cook on Corporations (6 Ed.), secs. 245, 246; Thompson on Corporations (3 Ed.), sec. 736; Bank v. Looney, 99 Tenn., 278, 292, 42 S. W., 149.

(3) Upon the facts disclosed by the record, we agree with the Chancellor that the appellants were not "innocent purchasers," or innocent holders, of the stock in question.

(4) Our views with respect to the attempted "cancellation" of the stock in question have already been stated and need not be repeated.

(5) In his petition, filed in the case of Clements Paper Company v. Hamilton Printing Company, for authority to sue John S. Fouche and T. G. Bush, Jr., for the recovery of their unpaid stock subscriptions, the Receiver said, among other things, the following:

"Petitioner avers, further, that there is $100 due from another stockholder of said corporation, a certificate for one share of common stock having been issued to him, for which no consideration was paid. This matter has been taken up with said stockholder, and Petitioner believes and charges that he will be able to collect this amount from said stockholder without the necessity of bringing suit."

In his bill in the instant case the Receiver, as complainant, alleges "that a certificate for one share of stock in the Hamilton Printing company was issued to and received by one other person, for which no consideration was ever paid to or received by the Company. However, complainant has had this matter up with this stockholder, and it appears that collection will be made therefor in full, without the necessity of suit."

The proof shows that one share of the par value of $100 was issued to Gordon L. Nichols, an officer of the Volunteer Branch of the First National Bank of Chattanooga, in order to qualify him as a director of the Hamilton Printing Company, and this was the share referred to in the foregoing quotations from the Receiver's petition in the case of Clements Paper Company v. Hamilton Printing Company, and the bill in the instant case, respectively. It does not appear whether or not the said share thus issued to Gordon L. Nichols had been paid for when the decree in this case was entered.

In a case of this character, "all the solvent (delinquent) stockholders within the jurisdiction should be joined, at least where it is practicable to do so." It was held in Sullivan v. Farnsworth, supra, (at page 704), that this is "the better practice," but we do not understand that the presence, as parties, of all the solvent stockholders who are delinquent is essential to the jurisdiction of the court, especially in the absence of objection on that ground.

The objection that the bill did not make Gordon L. Nichols a party-defendant was not made in the court below by pleading or otherwise. The general rule is that an appellate court will consider only such questions as were raised in the lower court. An all-sufficient reason for the existence of this rule is that if the question had been raised in the lower court the objection might have been remedied. 2 R. C. L., pp. 69-71, sec. 52. The instant case affords a good illustration of the reason for the rule just stated. If the absence of Gordon L. Nichols as a party-defendant had been pleaded in limine, he could have been brought in by amendment, as his deposition in the record shows that he was within the jurisdiction of the court. If the defendant would rely upon the want of proper parties as a defense, he should set it up in his answer. Gibson's Suits in Chy. (3 Ed.), sec. 358. Not having made this objection below, appellants cannot make it for the first time in this court.

We concur in the findings and opinion of the Chancellor, and all of the assignments of error are overruled. The decree of the Chancery Court is affirmed and a decree will be entered accordingly. The cause will be remanded to the Chancery Court of Hamilton County for the execution of the reference ordered and for such further proceedings as may be necessary to effectuate the decree. The costs of the appeal will be adjudged against the appellants and the surety on their appeal bond. The costs of the Chancery Court will be paid as may be hereafter adjudged by the Chancellor.

Crownover and DeWitt, JJ., concur.